IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Joshua Hilbert, | ) | C/A No. 3:19-73-JMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER AND** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| City of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Joshua Hilbert, proceeding with counsel, filed this employment discrimination action. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendant City of Columbia's ("the City") motion for summary judgment. (ECF No. 32.) Hilbert filed a response in opposition to the motion (ECF No. 41), and the City filed a reply (ECF No. 47). Having reviewed the record presented and the applicable law, the court concludes that the City's motion for summary judgment should be granted.

## BACKGROUND

The following facts are either undisputed or are taken in the light most favorable to Hilbert, to the extent they find support in the record. Hilbert was employed as a parking enforcement monitor in the City's Parking Services Department from December 6, 2010 to December 19, 2014, and he was rehired on May 31, 2016. In February 2017, the City was made aware that another parking enforcement monitor, Eric Earles, who is white, made racist remarks when he got into an off-duty altercation with a bouncer at a local bar. The City did not take any disciplinary action against Earles, purportedly because Earles's conduct occurred outside of his employment with the City.

Earles's racist comments created tension between Earles and the African-American parking enforcement monitors, which manifested itself in numerous conflicts, racially driven verbal altercations, and threats of violence involving Earles. Sometime in spring 2017, Hilbert, who is also white, reported to his supervisor that Earles continued to make racially derogatory comments at work. In March 2017, Earles and an African-American parking enforcement monitor, Michael Prophet, were involved in a verbal altercation in the monitor's breakroom that nearly became physical. Afterward, Hilbert described the incident to Parking Enforcement Supervisor Rodney Wingard on the phone and told Wingard that he was afraid of being confused with Earles because they are both white.

On May 9, 2017, Hilbert observed Prophet spray insect repellant on Earles's cup and exposed straw without Earles's knowledge while they were sitting in the break room. Earles approached Hilbert about his cup and straw smelling "funny," but Hilbert did not disclose that a co-employee had sprayed insect repellant on Earles's cup and straw, and instead told Earles that he could not help because his sinuses were clogged.

Earles eventually determined that insect repellant from the breakroom was sprayed on his cup and straw and reported to the Parking Enforcement Supervisor, Rodney Ingard, who reported the incident up the chain of command. Earles also reported the incident to the police, indicating that he believed a co-worker tried to poison him. The Director of Parking Services also reported the incident to police. Hilbert was interviewed by the police on May 12, 2017 and initially denied any knowledge of the insect repellant incident, but later admitted that he observed the incident when the police confronted him with the facts discovered during the investigation.

The City placed Hilbert and others involved in the incident on investigatory suspension for knowingly tampering with a co-worker's property with intent to harm. In his response to the

suspension, Plaintiff wrote "I should have said something, instead of keeping my mouth shut." (Def.'s Mem. Supp. Summ. J., Ex. 11, ECF No. 32-12 at 3.) On May 18, 2017, Hilbert was offered the opportunity to resign in lieu of termination, but he declined. Hilbert was fired that same day for willful intent to harm another team member and failure to report a criminal act in a timely manner. (Def.'s Mem. Supp. Summ. J., Ex. 15, ECF No. 32-16 at 2.)

Hilbert filed this action on January 9, 2019, raising claims of retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.; gross negligence; defamation; and wrongful discharge in violation of public policy.

## DISCUSSION

**A.     Summary Judgment**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Methods of Proof in Employment Cases**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, he may attempt directly to prove discrimination with direct or circumstantial evidence. Alternatively, when direct proof is lacking, a plaintiff may proceed under the McDonnell Douglas burden-shifting framework. See Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Smith v. First Union Nat'l Bank, 202 F.3d 234, 248 (4th Cir. 2000) (holding that the McDonnell Douglas framework applies to retaliation claims under Title VII). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate,

nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[], but [was] a pretext for discrimination." Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be

considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     The City's Motion to Amend the Answer**

Initially, the court must resolve the City's motion to amend its Answer to add a defense of failure to exhaust administrative remedies. (ECF No. 29.) The City must show good cause for why the court should allow it to amend its Answer. See Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.").[1]

The City's defense is based on Hilbert's purported failure to properly verify his charge of discrimination before the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Mem. Supp. Summ. J., ECF No. 32-1 at 8-11.) Specifically, the City argues that Hilbert's attorney signed Hilbert's name on the charge and the charge was not notarized.[2] (Id.) The City asserts that it did not learn that the charge was signed by Hilbert's attorney until Hilbert's October 2, 2019 deposition, wherein Hilbert admitted that the signature on the charge was not his and he never notarized the charge. (Def.'s Mot. to Amend, ECF No. 29 at 2.) Thus, the City argues, it should be allowed to amend its Answer to conform to the evidence produced in discovery. On the other

---

[1] The City filed the motion to amend the Answer on February 6, 2020. The court's deadline for the parties to amend their pleadings ran on April 30, 2019.

[2] See 42 U.S.C. § 2000e-5(b) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires."); 29 C.F.R. § 1601.3(a) ("[T]he term verified shall mean sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury.").

hand, Hilbert argues that the City received a copy of the charge of discrimination as early as April 2018 during the EEOC's administrative process. (Pl.'s Resp. Opp'n to Mot. to Amend, ECF No. 30 at 5.) The City does not dispute that it received the charge in April 2018.

The court concludes that the City fails to show good cause to amend the Answer. The City indicates it did not discover that Hilbert did not sign the charge until Hilbert's October 2019 deposition, calling it a "latent" defect. (Def.'s Reply to Mot. to Amend, ECF No. 31 at 3.) But the City fails to provide any explanation for why it did not raise the failure to exhaust defense in its Answer based on Hilbert's failure to notarize the charge, which appears plainly on the face of the charge. (Def.'s Mot. to Amend, Ex. 5, ECF No. 29-5 at 2.) Thus, even if the City did not actually learn that Hilbert did not personally sign the charge until Hilbert's deposition,[3] it fails to explain why it did not challenge his failure to properly verify the charge before the EEOC or raise the exhaustion defense earlier in this litigation. Cf. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 263 (3d Cir. 2006) (holding that where an employer has actual notice of a discrimination charge and chooses to respond to the merits of the claim before the EEOC without asserting lack of verification as a defense, it waives its right to secure dismissal of the federal court proceedings on that basis because, otherwise, the employer would receive a windfall without serving the verification requirement's purpose of protecting employers from frivolous claims by requiring plaintiffs to support their claims under oath). Accordingly, the City's motion to amend is denied. (ECF No. 29.)

---

[3] Hilbert argues that his attorney signed Hilbert's name "at the direction of Mr. Hilbert and with his permission." (Pl.'s Resp. Opp'n to Mot. to Amend, ECF No. 30 at 3.)

**D.    The City's Motion for Summary Judgment**

    **1.    Retaliation Pursuant to Title VII**

The City argues Hilbert's retaliation claim fails as a matter of law because Hilbert cannot demonstrate a *prima facie* case of retaliation.  The court agrees.

Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute.  See 42 U.S.C. § 2000e-3(a).  The requisite elements for a *prima facie* case of retaliation typically include:  (1) the employee engaged in a protected activity; (2) the employer acted adversely against him or her; and (3) there was a causal connection between the protected activity and the asserted adverse action.  Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).  Further, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

Here, even assuming Hilbert can establish a *prima facie* case of retaliation pursuant to Title VII, no reasonable jury could find that the City terminated him in retaliation for a protected activity.  Hilbert forecasts no evidence that his complaint to his supervisor about his fear that he would be confused with Earles was known by anyone that was involved in the decision to terminate him.  See Reeves, 530 U.S. at 148.  Hilbert argues he can show that the decision to terminate him was pretextual based on the temporal proximity between his March 2, 2017 complaint to his supervisor and his May 18, 2017 termination.  However, Hilbert's reliance on temporal proximity, without more, fails to carry his burden to establish pretext.  See Perry v. Kappos, 489 F. App'x 637, 643 (4th Cir. 2012) (stating that the plaintiff could not rely on temporal proximity alone to

establish the requisite nexus of causation, and noting that temporal proximity alone would even be insufficient to satisfy the causation element of the *prima facie* test except where the proximity is "very close") (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)); see also Mercer v. Arc of Prince Georges Cty., Inc., 532 F. App'x 392, 397 (4th Cir. 2013) ("While timing is a relevant factor, it will rarely be independently sufficient to create a triable issue of fact.") (citing Simpson v. Office of the Chief Judge of the Cir. Ct., 559 F.3d 706, 713 (7th Cir. 2009)).  Hilbert points to no evidence that the City considered his complaint when it decided to terminate him for its proffered legitimate, non-discriminatory reason.  Nor has Hilbert offered any evidence that would raise doubts about the whether the City genuinely terminated Hilbert for lying to the police during an investigation of a workplace incident.  Therefore, the court concludes that on this record, Hilbert fails to meet his burden of showing that but for his complaint to his supervisor, he would not have been terminated.

### 2.     **Gross Negligence**

The City argues Hilbert cannot establish the elements of gross negligence as a matter of law.[4]  Specifically, the City argues that even assuming Hilbert can show that the City owed him a

---

[4] The City also asserts that it is immune from suit for gross negligence under the South Carolina Tort Claim's Act's discretionary function exception.  See S.C. Code Ann. § 15-78-60(5).  "To establish discretionary immunity, the governmental entity must prove that the governmental employees, faced with alternatives, actually weighed competing considerations and made a conscious choice.  Furthermore, the governmental entity must show that in weighing the competing considerations and alternatives., it utilized accepted professional standards appropriate to resolve the issue before them."  Stephens v. CSX Transp., Inc., 781 S.E.2d 534, 543-44 (S.C. 2015) (quoting Pike v. S.C. Dep't of Transp., 540 S.E.2d 87, 90 (S.C. 2000)).  The burden is on the governmental entity to show that the immunity applies.  See Pike, 540 S.E.2d at 91 ("We hold that when a governmental entity asserts the affirmative defense of discretionary immunity under the Tort Claims Act, the burden of proof is on the governmental entity and this burden is one of persuasion by a preponderance of the evidence.").  The City has not forecasted any evidence that it utilized accepted professional standards and weighed competing considerations when it terminated Hilbert.  Accordingly, the City is not entitled to discretionary function immunity at this time.

duty to conduct an investigation into Earles's conduct or to diffuse racial tensions in the Parking Services Department, he cannot show that a breach of that duty was the proximate cause of his injuries. The court agrees.

To establish negligence in South Carolina, the plaintiff must prove: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damages proximately resulting from the breach of duty. Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 82-83 (S.C. 1998) (citing Rickborn v. Liberty Life Ins. Co., 468 S.E.2d 292 (S.C. 1996)). "The Court must determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff." Dorrell v. S.C. Dep't of Transp., 605 S.E.2d 12, 15 (S.C. 2004) (citing Steinke v. S.C. Dep't of Labor, Licensing, & Regulation, 520 S.E.2d 142, 149 (S.C. 1999)). Gross negligence is "a relative term and means the absence of care that is necessary under the circumstances." Plyler v. Burns, 647 S.E.2d 188, 196 (S.C. 2007); Clark v. S.C. Dep't of Pub. Safety, 608 S.E.2d 573, 576-77 (S.C. 2005). South Carolina courts define gross negligence as the "intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do," or as the "failure to exercise slight care," id., in contrast to ordinary negligence, which is the failure to exercise due care, Clyburn v. Sumter Cty. Sch. Dist. No. 17, 451 S.E.2d 885, 887 (S.C. 1994).

Hilbert argues that the City's failure to "quash racial tension" in the Parking Services Department "culminated" in Prophet's contamination of Earles's cup, which "resulted" in Hilbert's termination. However, the record here shows that the proximate cause of Hilbert's termination was his failure to report Prophet's behavior and then his lying about his knowledge of the incident when it was investigated by the police. No reasonable jury could find that the City could have foreseen that racial tension in the office would cause Hilbert to fail to report his co-

employee's misbehavior and then lie to the police about it. See, e.g., Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 83 (S.C. 1998) (stating that a purported tortfeasor is not liable where intervening, independent, and unforeseeable negligent conduct of another causes the injury). Accordingly, Hilbert's gross negligence claim fails as a matter of law. See id. ("Only when the evidence is susceptible of only one inference does proximate cause become a matter of law for the court.").[5]

### 3. Defamation

The City argues that Hilbert cannot demonstrate that the City published false, defamatory statements about Hilbert to third parties. The court agrees.

Under South Carolina law, the elements of defamation are: "(1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Fountain v. First Reliance Bank, 730 S.E.2d 305, 309 (S.C. 2012) (quoting Erickson v. Jones St. Publishers, LLC, 629 S.E.2d 653, 664 (S.C. 2006)).

Here, Hilbert argues that the City's stated reasons for terminating him were false and defamatory. However, Hilbert fails to identify a third party to which the City published those reasons. Hilbert argues a co-worker observed Hilbert being escorted out of the office with his personal belongings "shortly after" he had been interviewed by police, and thus, that act constituted publication, but by the co-worker's own testimony, Hilbert told the co-worker why he

---

[5] The City also argues that Hilbert's gross negligence claim is barred by the exclusivity provision of the South Carolina Workers' Compensation Act, S.C. Code Ann. § 42-1-540. However, Hilbert concedes that he cannot recover for any injuries that are covered by the Act. See S.C. Code Ann. § 42-1-310.

was terminated. (Conyers Dep., ECF No. 41-6 at 5.) Moreover, as argued by the City, an employer's internal evaluation of an employee's job performance is privileged absent abuse or actual malice, see Harris v. Tietex Int'l Ltd., 790 S.E.2d 411, 415-16 (S.C. Ct. App. 2016), and here, Hilbert fails to point to any evidence from which a jury could reasonably find that the City's stated reasons for Hilbert's termination constituted actual malice or abuse. See id. (affirming the trial court's grant of summary judgment as to the plaintiff's defamation claim on the basis of qualified privilege where the plaintiff failed to set forth an argument explaining what evidence could support a finding that the employer's internal memos regarding the plaintiff's job performance were made with actual malice or abuse). Consequently, Hilbert's defamation claim fails as a matter of law.

### 4.     Wrongful Discharge

The City argues that Hilbert's wrongful discharge in violation of public policy claim fails as a matter of law. Again, the court agrees.

In South Carolina, employment at-will is presumed, but under the public policy exception, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy. Barron v. Labor Finders of S.C., 713 S.E.2d 634, 637 (S.C. 2011). What constitutes public policy is a question of law for the courts to decide. Id. at 638. South Carolina courts have previously found that the public policy exception to at-will employment applies to situations where an employer requires an employee to violate the law or the reason for the termination itself is a violation of criminal law, see id. at 637, and though the exception is not necessarily limited to those situations, a plaintiff must identify a specific source of public policy that warrants the application of the exception to novel circumstances. Here, Plaintiff fails to point to any authority

to support such an extension.  See Mumford v. Florence Cty. Disabilities & Special Needs Bd., C/A No. 4:19-cv-1330-MGL-KDW, 2019 WL 5748959, at *6 (D.S.C. Sept. 17, 2019) (recommending dismissal of the plaintiff's wrongful discharge in violation of public policy claim because the plaintiff failed to identify a clear mandate of public policy to support her claim), Report and Recommendation adopted by, 2019 WL 5721631 (D.S.C. Nov. 5, 2019).

Moreover, the public policy exception does not apply where the employee has an existing statutory remedy for wrongful termination.  Barron, 713 S.E.2d 615; Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C. 1992) (finding that where a statutory remedy for wrongful termination exists, the plaintiff may not elect to pursue a wrongful termination in violation of public policy claim in lieu of the existing remedy).  Hilbert argues that his termination violated his right to equal protection under the South Carolina Constitution.  However, statutory remedies exist for Hilbert regarding the conduct of which he complains.  See, e.g., Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494 at *4 (4th Cir. 1998) ("South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law.  It has not been extended to circumstances where there is a statutory remedy for employment [based on race and gender] discrimination, as in this case."); Donaldson v. Clover Sch. Dist., C.A. No. 0:15-1768-MBS-KDW, 2017 WL 8897151, at *14 (D.S.C. July 24, 2017) (finding that the plaintiff's wrongful discharge claim was precluded by the South Carolina Whistleblower Act), Report and Recommendation adopted by, 2017 WL 4173596 (D.S.C. Sept. 21, 2017); see also Epps v. Clarendon Cty., 405 S.E.2d 386, 387 (S.C. 1991) (finding summary judgment was appropriate on the plaintiff's wrongful discharge in violation of public policy claim where a remedy existed under § 1983).  Therefore, Hilbert's wrongful discharge in violation of public policy claim also fails as a matter of law.

## RECOMMENDATION

Based on the foregoing, the court recommends the City's motion for summary judgment be granted. (ECF No. 32.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 19, 2020
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).