IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Joshua Hilbert, ) | |
| ) | Civil Action No.: 3:19-cv-00073-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| City of Columbia, ) | |
| ) | |
| Defendant. ) | |
| ) | |

    Plaintiff Joshua Hilbert ("Plaintiff") brought this action against Defendant City of Columbia ("Defendant" or the "City") alleging a retaliatory termination under Title VII, gross negligence, defamation, and wrongful discharge in violation of public policy. (ECF No. 1.) This matter is before the court upon review of Plaintiff's Objections (ECF No. 54) to the Report and Recommendation issued by the Magistrate Judge on June 19, 2020 ("Report") (ECF No. 52). The Report recommended that the court grant Defendant's Motion for Summary Judgment. (ECF No. 32.) For the reasons set forth below, the court **ACCEPTS** the Report (ECF No. 52) and **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 32).

**I. FACTUAL AND PROCEDURAL BACKGROUND[1]**

    On May 9, 2017, Plaintiff, a former parking enforcement monitor for the City, witnessed coworker Michael Prophet clandestinely spray insect repellant on coworker Eric Earles' drinking cup and straw in the breakroom. (ECF No. 52 at 2.) Earles later approached Plaintiff about his cup and straw smelling "funny" and asked him to smell them. (*Id.*) Plaintiff simply replied he could not help Earles due to clogged sinuses and took no further action. (*Id.*) Earles eventually discovered

---

[1] The Report sets forth the relevant facts and legal standards, which this court incorporates herein without a full recitation.

1

what happened and reported the incident to his supervisor and the police. (*Id.*) Plaintiff was interviewed by police a few days later and initially denied seeing Prophet spray the cup and straw. (*Id.*) But after being further confronted by officers, Plaintiff admitted that he witnessed the incident. (*Id.*)

The same day of his interview with police, Plaintiff was suspended and escorted out of the building, "which was observed by numerous people." (ECF Nos. 1 at 5-6 ¶ 30; 52 at 2.) In response to his suspension, Plaintiff wrote, "I should have said something, instead of keeping my mouth shut." (ECF No. 52 at 3.) On May 17, 2017, Plaintiff declined to resign and "was fired that same day for willful intent to harm another team member and failure to report a criminal act in a timely manner." (*Id.*)

Plaintiff claims the above incident was precipitated by numerous racially driven conflicts involving Earles, who is white. (*Id.* at 2.) Earles repeatedly made racist remarks and exacerbated tensions with African American parking monitors, including Prophet, that nearly led to a physical altercation at least once. (*Id.*) Plaintiff alleges he reported Earles to a supervisor for such remarks in early 2017. (*Id.*) On another occasion, Plaintiff apparently told a supervisor "he was afraid of being confused with Earles because they are both white." (*Id.*)

After being terminated, Plaintiff filed this action on January 9, 2019, claiming retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; gross negligence; defamation; and wrongful discharge in violation of public policy. (ECF No. 1.) Defendant filed the instant Motion for Summary Judgment on February 28, 2020. (ECF No. 32.)

The Magistrate Judge issued the Report on June 19, 2020, suggesting Defendant's Motion for Summary Judgment be granted. (ECF No. 52.) Specifically, the Magistrate Judge first found Plaintiff could not prove a *prima facie* case of retaliatory termination because he failed to establish

2

causation between his termination and his complaint about Earles, and, even assuming he demonstrated a *prima facie* case, he failed to show the reason for his termination was pretextual. (*Id.* at 8-9.) Second, after finding the City was not immune from a gross negligence claim, the Magistrate Judge decided the claim's dismissal was appropriate because Defendant's alleged failure to "quash racial tensions" did not proximately cause Plaintiff's termination. (*Id.* at 10-11.) Third, the Magistrate Judge found the defamation claim required dismissal in part because Plaintiff disclosed the reasons for his termination to a coworker. (*Id.* at 11-12.) Fourth and finally, the Magistrate Judge observed that a claim for wrongful discharge in violation of public policy was inappropriate because Plaintiff did not identify a clear mandate of public policy to support his claim and already had an existing statutory remedy for his wrongful termination. (*Id.* at 12-13.)

## II. JURISDICTION

This court has jurisdiction over Plaintiff's Title VII claim via 28 U.S.C. § 1331, as the claim arises under a law of the United States, and also via 42 U.S.C. § 2000e-5(f)(3), which empowers the court to hear claims "brought under" Title VII. Additionally, the court has supplemental jurisdiction over Plaintiff's state law claims for gross negligence, defamation, and wrongful discharge in violation of public policy pursuant to 28 U.S.C. § 1367(a), because these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.*

## III. STANDARD OF REVIEW

A. <u>Report and Recommendation</u>

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).

The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Id.* The court reviews *de novo* only those portions of the Report and Recommendation to which specific objections are filed. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The court reviews those portions which are not specifically objected to only for clear error. *Id.* at 316. The court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

    B.  <u>Motion for Summary Judgment</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under governable law will properly preclude the entry of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party in order to avoid summary judgment. *See id.* at 248.

## IV. DISCUSSION

Plaintiff argues the Magistrate Judge (1) improperly dismissed Plaintiff's retaliation claim because he could not show Defendant's reasons for termination were pretextual; (2) erroneously concluded Plaintiff's claim for gross negligence failed "because his own actions constituted unforeseeable intervening acts that proximately caused his termination"; and (3) incorrectly analyzed the defamation claim based on misinterpreted testimony.[2] (ECF No. 54 at 1-3.) The court examines each contention in turn.

A. <u>Retaliatory Termination</u>

Plaintiff posits that his retaliation claim should survive summary judgment primarily because the reasons for his termination were pretextual.[3] (ECF No. 54 at 4-6.) Specifically, Plaintiff alleges pretext because "the City abandoned its normal procedures in terminating" him; Plaintiff's termination was relatively close in time to his protected activity; and his termination form did not include "lying to a law enforcement officer" as a reason for termination, which the City raised only after Plaintiff filed the instant suit. (*Id.*) Additionally, Plaintiff claims he was treated differently than other similarly situated individuals, and notes that Earles was not fired "for numerous infractions of a more egregious nature, including being recognized as a City employee while calling a bar employee a racially derogatory term and telling him he had a noose ready for him, attempting to stage a walk out of City employees, sleeping on the job, violating the smoking policy, and threatening other City employees." (*Id.* at 5.)

---

[2] Plaintiff does not object to the dismissal of his claim for wrongful termination in violation of public policy. The court thus adopts the Magistrate Judge's recommendation to dismiss this claim.
[3] For protected activity, Plaintiff highlights his complaint to a supervisor regarding Earles' racist remarks. (ECF No. 54 at 3.)

"Title VII prohibits an employer from both (i) discriminating against an employee on the basis of sex, and (ii) retaliating against an employee for complaining about prior discrimination or retaliation." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (citing 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a)). Plaintiff seeks to prove his retaliation claim by using the *McDonnell Douglas* framework.[4] *See Id.*

To prevail under the *McDonnell Douglas* framework, Plaintiff must first establish a *prima facie* case of retaliation by showing: "(i) that [he] engaged in protected activity, (ii) that [Defendant] took adverse action against [him], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster*, 787 F.3d at 250 (*quoting Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004)). "A plaintiff [establishes that the defendant took an adverse action against him or her] if 'a reasonable employee would have found the challenged action materially adverse,' meaning that it 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Pyatt v. Harvest Hope Food Bank*, No. CA 3:10-2002-MBS, 2012 WL 1098627, at *9 (D.S.C. Mar. 29, 2012) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

If Plaintiff establishes a *prima facie* case of retaliation, Defendant may rebut the presumption of retaliation by articulating a non-discriminatory reason for its action. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001) (citation omitted). At that point, Plaintiff has the opportunity to prove that the employer's legitimate, non-discriminatory reason is pretextual. *Id.*

---

[4] "A plaintiff may establish a discrimination claim under Title VII through two avenues of proof," (1) through the mixed-motive framework, utilizing direct or circumstantial evidence, or (2) through the *McDonnell Douglas* pretext framework. *Thomas v. Delmarva Power & Light Co.*, 715 Fed. Appx. 301, 302 (4th Cir. 2018) (unpublished opinion) (internal citations omitted). Plaintiff brings his challenge under *McDonnell Douglas*.

6

Here, the court finds Plaintiff's *prima facie* case of retaliation must be dismissed. Assuming Plaintiff demonstrated *prima facie* retaliation, he failed to show that Defendant's legitimate, nondiscriminatory reason for termination was pretextual. For one, it appears Defendant's alleged deviation from disciplinary procedures did not evince pretext due primarily to the egregiousness of Plaintiff's conduct. Plaintiff admitted he not only witnessed a coworker poison the cup and straw of another coworker and did nothing about it, but also stayed silent when directly asked by Earles about it shortly thereafter. Even if Plaintiff had stellar performance reviews and did not initially lie to police about what he observed, such imprudent conduct certainly authorized Defendant to terminate Plaintiff, an at-will employee, without first affording Plaintiff "progressive discipline." Indeed, despite Plaintiff's implications to the contrary, Defendant correctly points out that "progressive discipline" does not equate to immunity from termination in all circumstances. (ECF No. 55 at 5 (citations omitted).) Instead, the City's employment handbook explicitly states that its "Progressive Discipline Guidelines chart is a general guideline to disciplinary action which may be appropriate for certain offenses. It is not possible to list all acts and omissions which may result in disciplinary action, and the appropriate disciplinary action will vary under the particular circumstances involved." (ECF No. 41-3 at 65 (emphasis in original).) *See Cain v. Providence Hosp., LLC*, No. 3:18-CV-2120-JFA-SVH, 2020 WL 1149724, at *7 (D.S.C. Mar. 10, 2020) ("The fact that Plaintiff believes the level of discipline should have been less than termination is not evidence of a pretext.").

Moreover, while "lying to" police was not listed on Plaintiff's termination form, it does not mean the reasons for his termination have changed over time. As emphasized by Defendant, "[t]here is no evidence the City offered inconsistent justifications, treated Hilbert more harshly

than other similarly situated employees,[5] or manufactured false criticisms. To the contrary, the only employees who conducted themselves in a similar fashion were separated on the same day as [Plaintiff], and for the same reasons." (ECF No. 55 at 5.)

Lastly, and as explained by the Magistrate Judge, Plaintiff's reliance on temporal proximity in this case cannot sustain his retaliation claim. *See Mercer v. Arc of Prince Georges Cty., Inc.*, 532 F. App'x 392, 397 (4th Cir. 2013) ("While timing is a relevant factor, it will rarely be independently sufficient to create a triable issue of fact."). As Plaintiff's allegations of pretext[6] are meritless, his claim for retaliation must therefore be dismissed.

B. Gross Negligence

Next, Plaintiff objects to the dismissal of his gross negligence claim. Specifically, he contests the finding that "his failure to report the insect repellant incident to his superiors" proximately caused his termination, because in reality he could have waited "to report a wrongful act within one month of its occurrence." (ECF No. 54 at 7.) Plaintiff further stresses the City in fact proximately caused his termination by failing to resolve racial tensions among employees. (*Id.* at 6-7.)

"To establish a cause of action for negligence in South Carolina, the plaintiff must prove: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or

---

[5] Plaintiff has not shown he was similarly situated to Earles, who committed a series of appalling infractions of a different nature. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (explaining a plaintiff must demonstrate "they are similar in all respects to their comparator," including "evidence that the employees dealt with the same supervisor, was subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.") (citation and internal marks omitted).

[6] Plaintiff also cursorily claims pretext because he was terminated "for not reporting the insect repellant incident quickly enough," despite the fact it would have purportedly been reasonable to report it up to one month later. (ECF No. 54 at 5.) This court addresses this argument *infra* and concludes Plaintiff has not shown evidence of pretextual motive by Defendant.

omission; and (3) damage proximately resulting from the breach of duty." *Jenkins v. United States*, No. CV 3:17-1775-TLW-PJG, 2018 WL 6926608, at *2 (D.S.C. Sept. 25, 2018), *report and recommendation adopted*, No. 3:17-CV-1775-TLW, 2019 WL 415848 (D.S.C. Jan. 31, 2019), *aff'd*, 778 F. App'x 227 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 2816 (2020) (citing *Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 82 (S.C. 1998)). Moreover, "[g]ross negligence is the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Clyburn v. Sumter Cty. Sch. Dist. No. 17*, 317 S.C. 50, 53 (1994) (citations omitted). In short, "[n]egligence is the failure to exercise due care, while gross negligence is the failure to exercise slight care." *Id.* (citations omitted).

Here, the court agrees with the Magistrate Judge that Plaintiff's termination was not proximately caused by Defendant's failure to resolve racial tensions, because "[n]o reasonable jury could find that the City could have foreseen that racial tension in the office would cause [Plaintiff] to fail to report his co-employee's misbehavior and then lie to the police about it." (ECF No. 52 at 10-11.) Instead, it seems Plaintiff's failure to act proximately caused his termination. It does not appear reasonable for Plaintiff to claim he could have waited a month to report this specific incident when he watched a coworker spray a poisonous substance on a cup and straw, and remained silent even after the would-be victim—with cup in hand—explicitly asked Plaintiff for assistance.[7] The court thus dismisses Plaintiff's claim for gross negligence against the City.

C. Defamation

Lastly, Plaintiff contends the Magistrate Judge erroneously found that Plaintiff disclosed the reason for his termination to another coworker, thereby requiring his defamation claim to be

---

[7] Furthermore, testimony from the City's Employee Relations Manager does not absolve Plaintiff of proximately causing his own termination, as the manager stated that employees *generally* report unlawful behavior within one month of the occurrence. (ECF No. 41-8 at 12-13 (emphasis added).)

dismissed due in part to self-publication. (ECF No. 54 at 8-9.) Yet Plaintiff points out the conversation cited by the Magistrate Judge was between two other coworkers and in fact did not personally involve Plaintiff. (*Id.* at 9.) Plaintiff goes on to argue that "the City's manner of terminating him insinuated wrongdoing equal to the publication of a defamatory matter." (*Id.* at 10.) Plaintiff further observes that South Carolina Supreme Court precedent supports his defamation claim, as the Supreme Court has found "an employer insinuated wrongdoing equal to the publication of a defamatory matter when the employer terminated an employee shortly after giving the employee a polygraph test, which communicated to other employees that the employee was discharged for some wrongful act." (*Id.* (citing *Tyler v. Macks Stores of S.C.*, 272 S.E.2d 633 (S.C. 1980)).)

In South Carolina, a defamation claim includes the following elements: "(1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Fountain v. First Reliance Bank*, 730 S.E.2d 305, 309 (S.C. 2012) (quoting *Erickson v. Jones St. Publishers*, LLC, 629 S.E.2d 653, 664 (S.C. 2006)).

Here, Plaintiff's defamation claim must fail because he "concedes that he lacks evidence regarding publication of the termination form" by Defendant. (ECF No. 54 at 8.) Even assuming Plaintiff's concession of this element is not fatal to his claim, the court further notes Plaintiff was in fact terminated for his failure to report the insect repellant incident. Any consequent insinuation of termination due to wrongdoing that arose from his interview with police and subsequent escort from the building would therefore be true and could not support a defamation claim. *Cain*, 2020 WL 1149724, at *10 (noting "true statements cannot constitute defamation").

## V. CONCLUSION

For the reasons discussed above, the court **ACCEPTS** the Report and Recommendation of the Magistrate Judge (ECF No. 52), and **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 32).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 30, 2020
Columbia, South Carolina